IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANNA QUINATA, | ) | CIVIL NO. 13-00339 JMS-RLP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTIONS TO |
| vs. | ) | DISMISS, DOC. NOS. 20, 21, 28 |
| | ) | |
| RHONDA NISHIMURA, in her | ) | |
| individual capacity, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, DOC. NOS. 20, 21, 28

## I. INTRODUCTION

On July 11, 2013, pro se Plaintiff Anna Quinata ("Quinata") filed a

Complaint against Hawaii State Circuit Court Judge Rhonda Nishimura ("Judge

Nishimura"), BMW Bank of North America ("BMW Bank"), the Honolulu law

firm Cades Shutte LLP, and Cades Shutte LLP employees Theodore D.C. Young,

Alana Peacott-Richards, Megan A. Suehiro, and Anthony Shannon (collectively,

"Defendants").  Quinata alleges that BMW Bank, with the assistance of Cades

Shutte LLP and its employees, wrongfully filed an action in Hawaii state court (the

"State Action") asserting that Quinata used a false check to pay the balance on a

BMW X5 sport utility vehicle (the "X5") she purchased through financing.

Quinata alleges that in the State Action, Judge Nishimura issued an ex parte order granting BMW Bank possession of the X5, and that Defendants' attempts to deprive her of the X5 violate her due process rights.

Currently before the court are Motions to Dismiss filed by (1) Judge Nishimura, Doc. No. 20; (2) Cades Shutte and its employees ("Cades Shutte Defendants"), Doc. No. 21, and BMW Bank, Doc. No. 28.  These Motions argue that Quinata fails to assert a plausible claim against any Defendant based on what occurred in the state action, and that granting leave to amend would be futile.  Cades Shutte Defendants and BMW Bank further seek their attorneys' fees.  Based on the following, the court agrees and GRANTS the Motions to Dismiss without leave for Quinata to amend, and DENIES the request for attorneys' fees.

## II.  FACTUAL BACKGROUND

### A.    The Contract for the X5

On November 20, 2011, Quinata entered into a contract with BMW of Honolulu to purchase the X5 for $85,412.55 (the "Contract").  Doc. No. 1-1, Compl. Ex. A at ECF 7 of 19.[1]  Quinata made no cash down payment, and instead

---

[1]  The court considers the documents attached to the Complaint without converting the Motions to Dismiss into motions for summary judgment.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Defendants also request that the court take judicial notice of documents filed in the State Action.  *See* Doc. Nos. 25, 29.  The court agrees that the State Action filings are appropriate matter for the court to take judicial notice.  *See Reyn's Pasta Bella*

(continued...)

traded in a vehicle, obtained a manufacturer's rebate, and borrowed the remaining

balance ($66,996.58) from BMW of Honolulu.  *Id.*

Pursuant to Section 11 of the Contract, it was assigned to BMW Bank.

*Id.*  Section 13(c) of the Contract gives BMW Bank a security interest in the X5,

which "secures payment and performance of [Quinata's] obligations under the

Contract, or any extensions thereof, including any indebtedness subsequently

arising because of [Quinata's] failure to perform such obligations."  *Id.* at ECF 8 of

19.  In the event of default, section 16(b) of the Contract gives BMW Bank the

right to accelerate payments and to repossess the X5.  *Id.*

## B.    The State Action

In January 2012, Quinata provided BMW Bank a check in the amount

of $66,577.72, appearing to be drawn from a First Hawaiian Bank account, to pay

off the balance due on the X5.  *Id.* at ECF 9 of 19.  On February 1, 2012, First

Hawaiian Bank returned the check with the notation "UNABLE TO LOCATE

ACCT."  *Id.*

On May 22, 2012, BMW Bank, through its attorneys at Cades Shutte,

filed the State Action in the First Circuit Court of the State of Hawaii alleging

---

[1](...continued)
*v. Visa USA*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (explaining that the court "may take judicial notice of filings and other matters of public record").

claims against Quinata for breach of contract, conversion, and fraud.  Doc. No. 29-2, BMW Bank Ex. 1, State Action Complaint.  BMW Bank further sought an entry of order and judgment for immediate possession of the X5 by filing an ex parte Motion for Immediate Possession of Personal Property pursuant to Hawaii Revised Statutes ("HRS") § 654-2 (the "Ex Parte Motion").  Doc. No. 1-1, Compl. Ex. A at ECF 2 of 19.  The Ex Parte Motion requested an order "directed to the sheriff or his deputy, or to the Chief of Police or an authorized police officer of the City and County of Honolulu, State of Hawaii, or a person authorized by the rules of court, to take the property described in the foregoing Verified Complaint."  *Id*. at ECF 2-3 of 19.  The Ex Parte Motion included a $75,000 Bond for Immediate Possession, and an Affidavit for Immediate Possession of Personal Property signed by BMW collections agent Bill McFarlane.  *Id.* at ECF 4-6 and 11-12 of 19.

The Affidavit outlines that (1) on November 20, 2011, Quinata entered into the Contract with BMW of Honolulu to purchase the X5; (2) Quinata took possession of the X5; (3) BMW of Honolulu assigned the Contract to BMW Bank; (4) Quinata provided BMW Bank a January 23, 2012 check drawn on a First Hawaiian Bank account in the amount of $66,577.72; (5) on February 1, 2012, BMW Bank was notified that the check was returned because the account on the check could not be located; (6) Quinata has not made a payment on the X5 since

4

January 2, 2012; (7) despite repeated demands, Quinata has made no further payments and has refused to voluntarily surrender the X5; (8) BMW Bank believes that the X5 is in Quinata's possession at her residence; (9) BMW Bank has a valid security interest in the X5 as set forth in the Contract; and (10) Quinata is in default on the loan in the amount of $67,869.51, including interest.  *Id.* at ECF 4-6 of 19.

On May 23, 2012, Judge Nishimura granted the Ex Parte Motion and issued an Order for Immediate Possession of Personal Property (the "Ex Parte Order").  The Ex Parte Order states that "this Court has inquired into the matter and finds that a prima facie claim for relief has been established; that the form, amount, and surety of the bond are good and sufficient and should be and are hereby approved by this Court; and that an order for immediate possession should issue subject to the protective provisions of [HRS § 654]."  *Id.* at ECF 18 of 19. The Ex Parte Order directs the "sheriff of the state of Hawaii, or his deputy, or the chief of police or any authorized police officer of the city and county of Honolulu, or a person authorized by the rules of court," to take possession of the X5 and deliver it to BMW Bank, unless before delivery Quinata makes an affidavit of her interest and right to possession of the X5 and executes a court-approved bond as required by HRS § 654-5.  *Id.* at ECF 18-19 of 19.

After BMW Bank was unable to locate the X5, it sought to compel

Quinata to disclose its location.  Quinata participated in the State Action, *see, e.g.*, Doc. No. 25-2, Ex. 2 (Motion to Dismiss); Doc. No. 25-3, Ex. 3 (Answer), and fought BMW Bank's efforts to obtain this information.  Specifically, in response to Judge Nishimura's orders requiring Quinata to testify under oath regarding the location of the X5, Quinata did not appear and instead filed various objections and requests for continuances, citing medical complications stemming from her pregnancy.  *See* Doc. No. 29-5, Ex. 4.  Judge Nishimura granted the request for continuance, ordered the hearing for Quinata's testimony to take place several months later (July 12, 2013), and gave Quinata the option to appear at a deposition at the Cades Shutte offices, testify telephonically, or to provide written answers to written questions by BMW Bank regarding the location of the X5.  Doc. No. 29-7, Ex. 5.  Quinata did not appear at the July 12, 2013 hearing.  Instead, on on July 11, 2013, Quinata filed this action asserting that Defendants' actions violated her due process rights.

On August 1 and 6, 2013, Defendants filed their Motions to Dismiss. Doc. Nos. 20, 21, 28.  Quinata filed an Opposition to Cades Shutte Defendants' Motion on September 18, 2013,[2] Doc. No. 53, and Cades Shutte Defendants filed a

---

[2] Quinata filed no oppositions to either Judge Nishimura's or BMW Bank's Motion to Dismiss.

Reply on September 30, 2013.[3]  Pursuant to Local Rule 7.2(d), the court

determines the Motions to Dismiss without a hearing.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*,

521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as

true all of the allegations contained in the complaint -- "is inapplicable to legal

conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d

1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not

simply recite the elements of a cause of action, but must contain sufficient

allegations of underlying facts to give fair notice and to enable the opposing party

---

[3]  Beyond the Motions to Dismiss, Quinata filed a Motion for Temporary Restraining Order ("TRO") on August 1, 2013, Doc. No. 24, which this court denied on August 26, 2013. Doc. No. 51.  Much of the court's reasoning for denying the Motion for TRO applies to the Motions to Dismiss, and the court restates this reasoning below.

to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## IV.  <u>DISCUSSION</u>

### A.    **Motions to Dismiss**

Quinata's Complaint asserts a single claim pursuant to 42 U.S.C. § 1983 that Defendants violated her rights to due process when Judge Nishimura issued the Ex Parte Order for possession of the X5 without providing Quinata notice and an opportunity for a meaningful hearing. Doc. No. 1, Compl. ¶¶ 22-24. Based on the following, the court finds that Quinata has failed to assert a plausible claim against any Defendant.

### 1.    *Judge Nishimura*

Quinata's claim against Judge Nishimura fails because judges are absolutely immune from liability for acts done by them in the exercise of their judicial functions.[4]  *See, e.g.*, *Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008); *Mullis v. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987) (holding that judges are absolutely immune from civil liability for damages for their judicial acts).  The doctrine of absolute judicial immunity is based on the policy that "judges should be at liberty to exercise their functions with independence and without fear of consequences."  *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (applying judicial immunity to an action under 42 U.S.C. § 1983 action).  Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991).  "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."  *Id.*  Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff."  *Moore v. Brewster*, 96 F.3d 1240, 1243-44 (9th Cir.

---

[4]  Because the court finds that Judge Nishimura is absolutely immune from this suit, the court need not address her other arguments for dismissal.

1996), *superceded by statute on other grounds as recognized in Tia v. Mollway*, 2011 WL 2945813, at *4 (D. Haw. July 20, 2011).  "A judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority."  *Meek v. Cnty. of Riverside*, 183 F.3d 962, 966 (9th Cir. 1999) (citing *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978)).

The Complaint asserts that Judge Nishimura improperly (1) entered the Ex Parte Order, (2) failed to be persuaded by Quinata's arguments that Defendants had committed various crimes, (3) continued to preside over the case after Plaintiff sought her disqualification, and (4) issued a bench warrant for Quinata after she failed to appear at hearings.  *See* Doc. No. 1, Compl. ¶¶ 13-14, 17-20.  Because these allegations are all directed to Judge Nishimura's acts done in the exercise of her judicial functions, Judge Nishimura is absolutely immune from suit and Quinata's claims against JudgeNishimura fail.  The court therefore GRANTS Judge Nishimura's Motion to Dismiss.

## 2.   *Individual Defendants*

The court further finds that Quinata has failed to state a plausible due process claim against any of the remaining Defendants.[5]

---

[5]  Although the remaining Defendants are private individuals, the facts of this case may be sufficient to establish that Defendants are acting under color of law.  *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 931 (1982) (stating that "a private party's joint participation with

(continued...)

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "This inquiry [] examine[s] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). To determine whether HRS § 654-2 satisfies due process, the court must apply the three-part inquiry of *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> First, the court must consider the private interest that will be affected by the prejudgment action. Second, the court examines the risk of erroneous deprivation and the probable value of additional safeguards. Third, in the case of a dispute between private parties rather than between an individual and the government, the court must consider the interest of the party seeking the prejudgment remedy, with "due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections."

*Tri-State Dev., Ltd. v. Johnston*, 160 F.3d 528, 530 (9th Cir. 1998) (quoting

---

[5](...continued)

state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."). Because the court finds that Quinata fails to establish a plausible due process violation, the court assumes, without deciding, that the remaining Defendants qualify as state actors. For this same reason, the court does not address Defendants' additional arguments for dismissal.

*Connecticut v. Doehr*, 501 U.S. 1, 11 (1991)).

The Supreme Court has examined the procedural safeguards found in a number of creditor remedies statutes, and defined the contours of their constitutionality. *See, e.g.*, *Doehr*, 501 U.S. at 4 (holding invalid Connecticut statute that "authorizes prejudgment attachment of real estate without prior notice or hearing, without a showing of extraordinary circumstances, and without a requirement that the person seeking the attachment post a bond"); *N. Ga. Finishing, Inc. v. Di-Chem, Inc*., 419 U.S. 601 (1975) (striking down Georgia statute which permitted garnishment of a business's bank account with the posting of a bond but without notice, and where the statute did not provide for judicial supervision, a factually complete affidavit, or an early hearing); *Fuentes v. Shevin*, 407 U.S. 67 (1972) (holding that Florida law that authorized repossession of sold goods without judicial order, approval, or participation was unconstitutional); *Sniadach v. Family Fin. Corp*., 395 U.S. 337 (1969) (striking down state statute allowing prejudgment garnishment of wages without notice and prior hearing).

This case is factually similar to *Mitchell v. W. T. Grant Co.*, 416 U.S. 600 (1974), which upheld a Louisiana statute allowing the prejudgment seizure of goods subject to a security interest.  Although the Louisiana statute required no notice and opportunity to be heard prior to seizure, it contained other procedural

12

safeguards, including that (1) the vendor submit both a verified petition outlining "specific facts" showing a basis for his claim; (2) the vendor submit a bond to protect against any damages in the event of improper seizure; (3) a writ for seizure may not issue until a judge (as opposed to a court clerk) determines that the vendor has made the appropriate showing; and (4) after seizure, the debtor may immediately seek dissolution of the writ and/or possession by posting his own bond. *Id*. at 605-06. *Mitchell* explained that these procedures satisfied due process -- the state has a legitimate interest in enabling the creditor to enforce his security interest in the debtor's property, and the absence of notice and a hearing prior to a seizure serves the creditor's interest by preventing the debtor from concealing, transferring, or wasting the property. *Id*. at 608-09. At the same time, the harm that a wrongful seizure might cause was minimized by the provision for notice and hearing immediately after the seizure, as well as the pre-seizure requirements. *Id*. at 610. *Mitchell* concluded that with these procedures, "the State has reached a constitutional accommodation of the respective interests" of the creditor and the debtor.[6] *Id*.

---

[6] Although *Mitchell* was decided before *Mathews*, *Mitchell's* rationale considered the same factors outlined in *Mathews*, and courts have applied *Mitchell* to hold that similar replevin and/or attachment statutes do not violate due process. *See, e.g.*, *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 731 (8th Cir. 2001) *opinion reinstated sub nom. Audio Odyssey v. Brenton First Nat'l Bank*, 286 F.3d 498 (8th Cir. 2002); *McLaughlin v. Weathers*, 170 F.3d

(continued...)

HRS Ch. 654 contains similar safeguards.  A claimant seeks possession of property at issue by (1) filing a verified complaint showing entitlement to immediate possession of the property at issue, *see* HRS § 654-1; and (2) executing a bond "of such amount and with such sureties as are approved by the court."  HRS § 654-2.  A court determines whether seizure should occur. Specifically, HRS § 654-2 provides:

> Upon the filing of the verified complaint or affidavit with the bond and a motion for immediate consideration of the matter, the court shall forthwith inquire into the matter, ex parte or otherwise, as in its discretion it determines.  If thereupon the court finds that a prima facie claim for relief has been established, it shall issue an order directed to the sheriff, sheriff's deputy, chief of police, an authorized police officer of any county, or an independent civil process server from the department of public safety's list under section 353C- to take the property therein described and deliver the same to the plaintiff.

The defendant also has options -- upon application, the proceeding "shall be advanced and assigned for hearing at the earliest possible date," *id.*, and if seizure has occurred, the defendant may make an affidavit and execute a bond to have the property returned pending resolution of the proceeding.  HRS § 654-5.

---

[6](...continued)
577, 581 (6th Cir. 1999), *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.*, 795 F.2d 1344, 1350 (7th Cir. 1986).  The court therefore relies on both *Mathews* and *Mitchell* in addressing Plaintiff's claim.

14

In light of these statutory provisions, the court finds that the Complaint fails to assert a plausible claim that HRS Ch. 654 fails to meet due process requirements. Although an ex parte order of immediate possession affects a defendant's property rights, HRS Ch. 654 minimizes the risk of erroneous deprivation -- the claimant must set forth specific facts showing entitlement to the property and execute a bond, and the issuance of an order requires court involvement. Especially in the case of a debtor/creditor, proof of the debt, the lien, and the delinquency "are ordinarily uncomplicated matters that lend themselves to documentary proof" such that "[t]he nature of the issues at stake minimizes the risk that the writ will be wrongfully issued by a judge." *Mitchell*, 416 U.S. at 609-10. Further, that the debtor may advance the proceeding for hearing at the earliest possible date lessens the interruption with her possessory rights to her property. *See id.* at 610 ("[T]he debtor may immediately have a full hearing on the matter of possession following the execution of the writ, thus cutting to a bare minimum the time of creditor- or court-supervised possession."). And although a pre-deprivation hearing may provide an additional safeguard against erroneous repossession, the risk of erroneous deprivation is already small and the bond would compensate for any improper seizure.

Indeed, weighing against such additional safeguard is that creditors

have substantial interests in securing property that is the subject of a loan, and as

*Mitchell* explains, there is a risk "that the buyer, with possession and power over

the goods, will conceal or transfer the merchandise to the damage of the seller."

*Id.* at 608-09.  *Mitchell* further reasons that where an installment payment plan is

involved such as here, a delay in retrieving the property may erode a creditor's

ability to be made whole:

> Wholly aside from whether the buyer, with possession
> and power over the property, will destroy or make away
> with the goods, the buyer in possession of consumer
> goods will undeniably put the property to its intende[d]
> use, and the resale value of the merchandise will steadily
> decline as it is used over a period of time.  Any
> installment seller anticipates as much, but he is normally
> protected because the buyer's installment payments keep
> pace with the deterioration in value of the security.
> Clearly, if payments cease and possession and use by the
> buyer continue, the seller's interest in the property as
> security is steadily and irretrievably eroded until the time
> at which the full hearing is held.

*Id.* at 608.  Weighing these considerations, the court finds that a facial challenge to

HRS Ch. 654 fails.

The court further finds that the Complaint fails to allege a plausible

as-applied challenge.  Rather, it appears that Defendants followed HRS Ch. 654 to

the letter -- Defendants filed a verified complaint outlining the basis for BMW

Bank's right to the X5 as required by HRS § 654-1, and also provided a bond as

required by HRS § 654-2.  Judge Nishimura then considered this information in issuing the Ex Parte Order.  Although Quinata did not have the opportunity for notice and a hearing before the Ex Parte Order was issued, Quinata has had multiple opportunities to participate in the State Action, and still had possession of the X5 at the time she filed her Complaint.[7]  Under these facts, Quinata cannot assert a plausible as-applied challenge.

In opposition, Quinata argues that a seizure without notice and hearing is permissible only where there are extraordinary circumstances, and there are no extraordinary circumstances in this action.  *See* Doc. No. 53, Quinata Opp'n at 13.  The court rejects this argument.  The court recognizes that some Supreme Court caselaw provides that a pre-deprivation hearing is generally required "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  *Fuentes*, 407 U.S. at 83 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378-379 (1971)).  *Mitchell*, however, included no specific requirement that "extraordinary circumstances" exist to allow seizure of personal property without a hearing, and its determination as to the Louisiana statute is still good law.  *See Doehr*, 501 U.S. at 16 (stating that

---

[7] The court need not determine whether the mere issuance of the Ex Parte Order, without repossession of the X5, deprived Quinata of any property interests.  And although Cades Shutte Defendants assert that the X5 has now been repossessed, *see* Doc. No. 54, Reply at 4 n.3, such fact, if pled, would not change the court's analysis.

*Mitchell* recognized that an assertion that the defendant was about to transfer

property and/or that the property may not be available to satisfy judgment are

"exigent circumstances" permitting the postponement of a hearing); *see also Audio*

*Odyssey, Ltd.*, 245 F.3d at 730 (rationalizing that *Mitchell* "perhaps narrowed"

*Fuentes*' "extraordinary situations" language). *Mitchell* determined that the

Louisiana statute was facially valid, and the statute did not require the plaintiff to

establish extraordinary or exigent circumstances to obtain a writ of sequestration

for personal property without a hearing. *See Mitchell*, 416 U.S. at 605. *Mitchell's*

facts and rationale are directly applicable to this action.

In further opposition, Quinata argues that HRS Ch. 654 is facially

invalid because it gives the judge no discretion to deny a writ of replevin. *See* Doc.

No. 53, Quinata Opp'n at 14. Rather, according to Quinata, a judge *must* grant a

writ of replevin any time a claimant posts a bond and swears entitlement to the

property, and these requirements are insufficient to establish the actual validity of a

claim. *Id.* The court rejects this argument as well. HRS § 654-2 provides that the

court shall grant a writ of replevin only where it first determines that a prima facie

has been established and the claimant executes a bond. These are similar

procedural safeguards determined to be constitutional by *Mitchell*, and therefore

pass scrutiny.

For these reasons, the court GRANTS the Motions to Dismiss as to the remaining Defendants.

## B.     Leave to Amend

Quinata seeks leave to amend her Complaint due to the "gravity of her allegations" and because she should be afforded an opportunity to address the deficiencies identified by the court.  Doc. No. 53, Quinata Opp'n at 15.

When dismissing the complaints of *pro se* litigants, the court abides by the principle that *pro se* litigants are "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action," "[u]nless it is absolutely clear that no amendment can cure the [complaint's] defect[s]."  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).  Given the analysis of Quinata's claims above, the court finds that granting leave to amend her Complaint would be futile -- no amendment would remedy her inability to assert claims against Defendants based on the allegation that HRS Ch. 654 violates her due process rights.  This dismissal is therefore without leave to amend.

## C.     Attorneys' Fees

Cades Shutte Defendants and BMW Bank assert that they are entitled to their reasonable attorneys' fees because Quinata has made no rational argument

entitling her to relief, and brought this action only to interfere with the State Action.

Pursuant to 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."  Although a prevailing plaintiff may receive attorneys' fees as a matter of course, "a prevailing defendant may only recover fees in 'exceptional circumstances' where the court finds that the plaintiff's claims are 'frivolous, unreasonable, or groundless.'"  *Braunstein v. Ariz. Dep't of Transp*., 683 F.3d 1177, 1187 (9th Cir. 2012) (quoting *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011)).  "A case may be deemed frivolous only when the 'result is obvious or the . . . arguments of error are wholly without merit.'"  *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981) (citation omitted)).

Although the court has determined that Quinata cannot assert a plausible claim that HRS Ch. 654 is unconstitutional, the court finds that her arguments attempting to distinguish *Mitchell* were not so unreasonable as to warrant attorneys' fees.  And although the timing of this action certainly suggests that Quinata filed this action to stall the State Action, the court does not consider

20

the subjective intent of the parties in determining attorneys' fees.  The court

therefore exercises its discretion and DENIES the request for attorneys' fees.

## V.  CONCLUSION

For the foregoing reasons, the court (1) GRANTS the Motions to

Dismiss, Doc. Nos. 20, 21, and 28, (2) DENIES Quinata's request for leave to

amend; and (3) DENIES the request for attorneys' fees.  The Clerk of Court is

directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 2, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Quinata v. Nishimura et al.*, Civ. No. 13-00339 JMS-RLP, Order Granting Defendants' Motions to Dismiss, Doc. Nos. 20, 21, 28